IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| WELLS FARGO CLEARING SERVICES, LLC, | : : : |
| *Plaintiff*, | : Case No. 1:22-cv-539 : |
| vs. | : Judge Jeffery P. Hopkins : : |
| STEVEN L. SATTER, | : : |
| *Defendant*. | : : |

## OPINION AND ORDER

In this action, Plaintiff Wells Fargo Clearing Services, LLC d/b/a Wells Fargo Advisors ("WFA") alleges that Defendant Steven Satter engaged in a scheme that resulted in the simultaneous, coordinated departure of several WFA financial advisors and other staff to a direct competitor, DayMark Wealth Partners. The departing advisors represented more than $1,200,000,000 of the assessments under management at WFA's branch in Kenwood, Ohio.

Currently before the Court is Defendant Satter's Motion to Compel Arbitration and Dismiss Pursuant to the Federal Arbitration Act (Doc. 14). Satter submits that WFA is a member firm of the Financial Industry Regulatory Authority ("FINRA") and that he is a FINRA associated person. FINRA rules require parties to arbitrate disputes that arise between FINRA members and FINRA associated persons. Consequently, Satter moves to compel the parties to arbitration and dismiss the action. WFA counters arguing that Satter is not a FINRA associated person and that, even if he is, this dispute falls outside the scope of FINRA arbitration. Because the Court agrees with Satter, the Court **GRANTS** the Motion to Compel Arbitration (Doc. 14) and for the reasons stated herein **DISMISSES** this case.

## I. BACKGROUND

Satter was employed by Wells Fargo Bank, N.A. from 2008 until 2022. Compl., Doc. 1, ¶ 9. At some point during his employment, Satter became the acting Vice President for the Bank. Doc. 17, PageID 167. However, Satter's "role, indeed his sole function" at Wells Fargo "was to represent and advise WFA." Compl., Doc. 1, ¶ 5. The Complaint characterizes Satter as a WFA employee despite his technical employment status. *See id.* ¶¶ 20, 39, 41, 44.

The Complaint alleges that, during his employment, Satter conspired with and solicited others to leave Wells Fargo and create DayMark, an investment advisory firm that competes with WFA, in violation of several policies and agreements. *Id.* ¶¶ 36–54. As a result of these actions, WFA sued Satter for civil conspiracy, breach of contract, tortious interference with employment contracts, tortious interference with relationships and prospective relations, breach of fiduciary duty and duty of loyalty, and punitive damages. Satter moved to compel arbitration of these claims. And then, after filing that motion, Satter filed an Answer, asserting several counterclaims against WFA, including defamation (false light), abuse of process, and tortious interference with business relations. Doc. 20.

## II. STANDARD OF REVIEW

"Before compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *PFS Invs., Inc. v. Imhoff*, No. 11-10142, 2011 WL 1135538, at *5 (E.D. Mich. Mar. 25, 2011) (quoting *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008) (alteration in original)). "[D]oubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Bank of Am., N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d

906, 911 (8th Cir. 2010) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24–25 (1983)). If the agreement to arbitrate is not "in issue," then the court must compel arbitration. 9 U.S.C. § 4. To put the agreement to arbitrate "in issue," the nonmovant has the burden to "show a genuine [dispute] of material fact as to the validity of the agreement to arbitrate." *Danley v. Encore Cap. Grp., Inc.*, 680 F. App'x 394, 397 (6th Cir. 2017) (quoting *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)). In reviewing a motion to compel arbitration, courts should "treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the nonmoving party." *Great Am. Ins. Co. v. Gemma Power Sys., LLC*, No. 1:18-cv-213, 2018 WL 6003968, at *2 (S.D. Ohio Nov. 15, 2018) (quoting *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003)).

### III. LAW AND ANALYSIS

WFA and Satter did not form an independent agreement to arbitrate. Rather, FINRA Rule 13200 requires disputes arising "out of the business activities of a member or associated person and [that] is between or among" FINRA members and FINRA associated persons to be arbitrated. FINRA R. 13200(a). WFA is a FINRA member and does not dispute that it has agreed to comply with FINRA rules. Doc. 17, PageID 112. The Court may therefore compel arbitration if Satter is a FINRA associated person.[1]

A FINRA associated person is "a person associated with a member." FINRA R. 13100(b).

---

[1] Questions about the arbitrability of claims are sent to the arbitrator when parties "clearly and unmistakably" provide that they should be. *Wilson-Davis & Co. v. Mirgliotta*, No. 1:16 CV 3056, 2017 WL 8676441, at *2 (N.D. Ohio Feb. 23, 2017) (citing *Smith Barney v. Sarver*, 108 F.3d 92, 96 (6th Cir. 1997)). FINRA's rules do not clearly and unmistakably provide that FINRA arbitrators decide questions of arbitrability. *Id.* at *3 (collecting cases). It is therefore appropriate for the Court to decide whether WFA's claims are arbitrable.

3

> A "person associated with a member" means: (1) a natural person who is registered or has applied for registration under the Rules of FINRA; or (2) a sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member.

FINRA R. 13100(u). "For the purposes of the Code, a person formerly associated with a member is a person associated with a member." *Id.*

WFA argues that arbitration cannot be compelled because Satter is not a FINRA associated person and is precluded from asserting that he is. It also argues that even if Satter is an associated person, the nature of the dispute falls outside the scope of required FINRA arbitration. The Court will address each of these arguments in turn.

**A. Satter may assert that he is a FINRA associated person.**

WFA argues that, because of assertions Satter made in a prior arbitration matter in Arizona, the doctrines of issue preclusion and judicial estoppel prevent him from claiming he is a FINRA associated person. In 2021, while still employed with Wells Fargo Bank, Satter moved to quash a subpoena issued in the Arizona arbitration by arguing, in part, that he was not a FINRA associated person and was not employed by a FINRA member. Doc. 17, Ex. 1, PageID 125–29. In a complete about face, Satter now aims to compel arbitration by asserting that he is a FINRA associated person employed by a FINRA member. Despite this contradiction, neither doctrine precludes Satter from making this argument.

Issue preclusion prevents parties from relitigating factual matters that were "fully considered and decided in a prior proceeding" including arbitration. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982); *Cent. Transp., Inc. v. Four Phase Sys., Inc.*, 936 F.2d 256, 257 (6th Cir. 1991) (giving preclusive effect to an arbitrator's decision). Judicial estoppel protects judicial integrity by preventing parties from successfully asserting "a position in one

4

tribunal and the opposite in another tribunal." *Aetna Life Ins. Co.*, 690 F.2d at 599. To "successfully assert" a position, the party must have gotten the first tribunal to accept the position. *Id.* "Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent results exists." *Id.*

Under either doctrine, the prior tribunal must have considered or accepted the assertion at issue. Here, there is no evidence that the Chairperson of the Arizona arbitration considered or accepted Satter's assertions about his relationship to a FINRA member. His motion to quash raised two independent arguments to justify quashing, and his declaration submitted in support of his motion provided a third. *See* Doc. 17, Ex. 1, PageID 125–29. Any of these reasons could have been what the Chairperson relied on in making his decision; the one-line opinion granting Satter's motion provided no reasoning. *Id.* at Ex. 3, PageID 164. Consequently, there is no risk of repetitive litigation, and judicial integrity remains intact.

### B. Satter is a FINRA associated person.

WFA argues that Satter is not an associated person because he was an employee and officer of Wells Fargo Bank, which is not a FINRA member. Further, his role as in-house counsel for WFA meant that he neither performed a role similar to an officer of WFA, nor engaged in the investment banking or securities business. These arguments are unavailing.

Satter's technical employment status with Wells Fargo Bank "is not controlling in the face of the conflicting reality, as gleaned . . . from [the plaintiff's] own depiction of the parties' linked relationship in various paragraphs of its complaint." *First Liberty Inv. Grp. v. Nicholsberg*, 145 F.3d 647, 652 (3d Cir. 1998). While the Complaint notes that the Bank employed Satter, it nevertheless characterizes him as a WFA employee. Further, it alleges that Satter had the power to conduct business on behalf of WFA, a firm engaged in the investment banking and

5

securities business. Compl., Doc. 1, ¶ 22. Satter's sworn declaration alleges, and WFA's briefings do not refute, that he had the power to bind WFA in settlement agreements. Satter Decl., Doc. 14-1, ¶ 3.

Satter was an officer of Wells Fargo Bank, but his role at the Bank was, according to the Complaint, "solely" to assist WFA. Thus, his capacity to conduct business on behalf of WFA, his authority to bind WFA in settlement agreements, and his work as an attorney that exposed him to WFA's confidential business secrets meant that he either "performed the functions of an individual engaged in the investment banking or securities business" or that he "occupied a similar status or performed similar functions" to an officer of WFA, or both. *See COR Clearing, LLC v. Jarvis,* No. 8:13CV292, 2014 WL 98799, at *5 (D. Neb. Jan. 9, 2014) (compelling a FINRA member firm to arbitrate claims brought against its officer and in-house counsel because the attorney/officer "performed the functions of an individual engaged in the investment banking or securities business" in his capacity as an officer); *Garrabrants v. Fin. Indus. Regul. Auth.*, No. 3:19-CV-01570, 2019 WL 5594920, at *4 (S.D. Cal. Oct. 29, 2019) (finding that the CEO of a non-FINRA bank and financial institution was a FINRA associated person because he was authorized to bind a FINRA member firm in settlement agreements and had signed court documents asserting his authority to make verifications on their behalf); *Waterford Inv. Servs., Inc. v. Bosco*, No. 3:10CV548-REP, 2011 WL 3820723, at *2–8 (E.D. Va. July 29, 2011), *report and recommendation adopted*, No. 3:10CV548, 2011 WL 3820496 (E.D. Va. Aug. 26, 2011), *aff'd*, 682 F.3d 348 (4th Cir. 2012) (compelling a FINRA member firm to arbitrate claims against an individual with "no employment or other direct contractual relationship with [the firm]" because the individual was nonetheless indirectly

controlled by the FINRA member firm and engaged in the investment banking or securities business). Under the circumstances, Satter clearly qualifies as a FINRA associated person.

### C. The nature of this dispute falls within the scope of FINRA arbitration.

Finally, WFA argues that, even if Satter qualifies under the statute as an associated person, the nature of this dispute falls outside the scope of FINRA arbitration. FINRA Rules require the arbitration of disputes between FINRA members and FINRA associated persons that "arise out of the business activities of a member or an associated person." FINRA R. 13200(a). WFA argues that "[t]his is not a simple employment dispute between a member and an associated person, but rather involves Attorney Satter's misuse of WFA's confidential and privileged information and violation of his ethical and contractual duties to his former client." Doc. 17, PageID 119.

District courts in the Sixth Circuit have "uniformly deemed employment-related claims . . . between brokerage firms and their agents as disputes 'arising out of business activities' of FINRA members." *Hawkins v. Questar Cap. Corp.*, No. 5:12-CV-000376, 2013 WL 5596897, at *4 (E.D. Ky. Oct. 11, 2013) (collecting cases). Similarly, district courts within our Circuit have also generally compelled FINRA arbitration in matters involving the misuse of confidential and privileged information, *P & M Corp. Fin., LLC v. Paparella*, No. 2:10-CV-10448, 2010 WL 4272829 (E.D. Mich. Oct. 22, 2010), as well as tortious interference and civil conspiracy claims, *Imhoff*, 2011 WL 1135538, at *4. The Sixth Circuit has likewise recognized FINRA arbitrations in cases involving breach of fiduciary duty and breach of loyalty claims. *See Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 784 (6th Cir. 2016).

There is nothing here that distinguishes WFA's claims against Satter. The claims arise out of Satter's business activities during and after his employment with WFA. They are not unlike claims that are customarily handled by FINRA arbitrators. Indeed, the claims in this case are more alike than they are dissimilar from those normally subject to arbitration. While not all employment-related claims are now subject to FINRA arbitration, none of the claims asserted by WFA fall into this specialized category. *See* FINRA R. 13201 (exempting employment discrimination, whistleblower, and sexual assault/harassment claims from arbitration).

### D. The Court may dismiss the action.

The only remaining issue is whether a dismissal or stay of the case is more appropriate. There is a circuit split over how much discretion a district court has when considering whether to stay or dismiss an action once the parties have been compelled to arbitrate. *Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 379–80 (6th Cir. 2021). The Federal Arbitration Act indicates that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" *Id.* at 379 (quoting 9 U.S.C. § 3). However, the Sixth Circuit has allowed district courts to choose to dismiss the action if "it is clear the entire controversy between the parties will be resolved by arbitration" so long as the court does not abuse its discretion by dismissing a case when the plaintiff "could face prejudicial statute-of-limitations hurdles to refiling the suit later." *Id.* at 380.

Here, WFA does not object to Satter's Motion to Dismiss the action and does not indicate that it would be prejudiced by the dismissal. Further, there is nothing apparent from

8

the nature of the dispute that suggests there will be remaining claims that will require further adjudication following the conclusion of the arbitration proceedings.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS** the Motion to Compel Arbitration and Dismiss Pursuant to the Federal Arbitration Act (Doc. 14). The case is thus **DISMISSED**, and the remaining motions (Docs. 4, 24) are **DENIED** as moot.

**IT IS SO ORDERED.**

June 4, 2025

Jeffery P. Hopkins
United States District Judge